UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CATHY E. BATES**  Case No. 3:09 CV 2349

    Plaintiff,  Judge James G. Carr

v.  REPORT AND RECOMMENDATION

**COMMISSIONER OF
    SOCIAL SECURITY**,

    Defendant.  Magistrate Judge James R. Knepp II

Plaintiff Cathy Bates appeals the administrative denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI) under 42 U.S.C. § 405(g) and § 1383(c)(3), respectively. This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2.

**Background**

Plaintiff contends she has been disabled since March 11, 2003 due to bronchiolitis obliterans, fibromyalgia, lumbar and cervical spinal degeneration, and depression. Plaintiff had worked as a customer service representative for a telephone company, motel desk clerk, office manager, plant accountant, and seamstress. She was 48 at the alleged onset date, a younger individual as defined by 20 C.F.R. §§ 404.1563(c) and 416.963(c). At the time she applied for benefits during February 2006, she was over 50 years of age, a person closely approaching advanced age as defined by §§ 404.1563(d) and 416.963(d).

In the final administrative decision, the administrative law judge (ALJ) denied Plaintiff benefits based on a finding that Plaintiff could perform a reduced range of sedentary work allowing for the performance of her past work as a customer service representative.[1] Plaintiff counters that under the administrative medical guidelines of Appendix 2, commonly known as "the grids," for a person closely approaching advanced age and limited to sedentary work, the table under Rule 201.06 indicates "disabled." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00 Table No. 1. Plaintiff, though, is mistaken. Rule 201.06 applies to persons of *advanced* age – 55 or older. *See* 20 C.F.R. §§ 404.1563(e); 416.963(e).  The grid's rules applicable to persons closely approaching advanced age do not uniformly indicate disability. *See* Rules 201.09 to 201.16 of Table No. 1. Therefore, this does not present a simple resolution to Plaintiff's appeal.

## Plaintiff's Remaining Contentions

Plaintiff challenges the ALJ's findings in two related ways:

1. The ALJ erred in his analysis of pain and credibility because he created inconsistencies where they did not exist; and

2. The ALJ erred in his analysis when he failed to consider Plaintiff's impairments in combination.

Plaintiff is correct regarding both contentions, as discussed below.

## Standard of Review

Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence,

---

[1] The ALJ's March 27, 2009 decision (Tr. 28-39) became the final decision of the Commissioner following the Appeals Council's denial of review (Tr. 1-3). *See* 20 C.F.R. §§ 404.981; 416.1481.

but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (quoting *Richardson*, 402 U.S. at 401). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 506 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Accordingly, the court must defer to the ALJ's determination "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (noting a court may "not inquire whether the record could support a decision the other way").

**Sequential Evaluation Process**

The Commissioner follows a five-step sequential evaluation regarding disability.  This evaluation begins with the question of whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i) & (ii); 416.920(a)(4)(i) & (ii). At the third step, the question is whether the claimant has an impairment which meets or equals an impairment from the Listing of Impairments of Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & (d); 416.920(a)(4)(iii) & (d).  If a claimant has an impairment meeting the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience.  *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (explaining once a claimant has met this burden "he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.").

"At the fourth step of the sequential approach described in 20 C.F.R. § 404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes* ex rel. *Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004). Once the administrative decision-maker determines an individual cannot perform past relevant work, the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *E.g., Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

**Credibility Analysis**

The ALJ found Plaintiff's residual functional capacity allowed for only sedentary work limited by occasional exposure to smoke, fumes, gases, and dust based on Plaintiff's chronic obstructive pulmonary disease[2] and fibromyalgia. (Tr. 21-22, 33, 36). A vocational expert at the administrative hearing testified that under these restrictions, Plaintiff could return to her past relevant work as customer service representative, as generally performed in the national economy. (Tr. 22, 39).

Plaintiff, however, argues the evidence – including her testimony – supports a finding of total disability. She testified her customer service job was stressful, which resulted in physical pain ("burning") from fibromyalgia. (Tr. 15-16, 37).

---

[2] Plaintiff contends she has bronchiolitis obliterans from her exposure to microwave popcorn butter flavoring vapors while working at ConAgra Snack Foods in Marion, Ohio. She supports this with several articles from medical journals. (Tr. 206-19). In March 2003, she participated in a health survey conducted by the National Institute for Occupational Safety and Health. (Tr. 206). Her employment was terminated on March 11, 2003 at the conclusion of this study. (Tr. 206, 282). In July, 2006 she was diagnosed with this disease a.k.a. "Popcorn packer's lung" by Dr. Parmet (Tr. 287).

A claimant's subjective complaints can support a claim for disability, but there must also be objective medical evidence in the record of an underlying medical condition. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . ." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

"[T]he ALJ was not bound to accept as credible [Plaintiff's] own testimony regarding her symptoms." *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms (especially pain) are difficult to prove,

disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ is to consider certain factors:

> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or ha[s] taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [claimant's] pain or other symptoms;
>
> (vi) Any measures [a claimant] use or ha[s] used to relieve [a claimant's] pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

The ALJ stated that "the record as a whole does not substantiate the claimant's allegation of a disabling impairment or combination of impairments." (Tr. 38). After noting "[t]he claimant has a fairly consistent work history which would give credibility to the claimant's symptomatology" (Tr. 38), the ALJ presented eight alleged inconsistencies in the record to support his finding that Plaintiff was not fully credible in her allegations of disability:

> 1. "There are no signs of findings of fibromyalgia, and musculoskeletal examinations have been normal";
>
> 2. "Regarding the claimant's chronic obstructive pulmonary disease, PFS are impaired, but diffusion capacities are normal. Clinical examinations do not consistently show abnormalities of pulmonary disease";

> 3. "[T]he claimant has not routinely seen a physician" and "has not received any counseling or treatment since the early 1990s" for her depression and anxiety;
>
> 4. The claimant "does not take prescription medication" for her physical impairments and "takes no medication" for her depression or anxiety;
>
> 5. "Considering [the claimant's] chronic obstructive pulmonary disease, she should not be smoking at all"
>
> 6. "[T]he claimant is able to engage in routine activities, more so than what she testified to"; and
>
> 7. "There are other inconsistencies in the record. For instance, at the June 2005 emergency room record[,] the claimant only mention[ed] her fybromyalgia in the review of symptoms. There is no mention of shortness of breath. And in July 2006 the claimant reported no neuropsychiatric problems, only hand pain."

(Tr. 38) (internal citations omitted).

In making his RFC determination and credibility analysis, the ALJ acknowledged the requirement that he consider pain and symptoms pursuant to SSR 96-7p and pain evaluation under 20 C.F.R. §§ 404.1529 and 416.929. (Tr. 37).  The ALJ found from the objective standpoint, Dr. Gilliam's report and opinion supported a restriction to sedentary work. (Tr. 37).  Dr. Gilliam, who examined Plaintiff at the behest of the state agency, performed a work up including pulmonary function, manual muscle, and range of motion studies. (Tr. 240-53). The ALJ adopted Dr. Gilliam's conclusions regarding the extent of the objective medical evidence of obstructive pulmonary disease, fibromyalgia, and low back pain. (Tr. 37). He concluded Plaintiff is able to sit and stand at will with moderate restriction on walking, and lift or carry up to 5 pounds frequently and up to 12 pounds occasionally. (Tr. 37, 241). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a); 416.967(a).

7

Plaintiff contends the ALJ created inconsistencies where they did not exist to discredit her. Specifically, she argues: 1) the ALJ did not understand the limitations to which she testified; 2) the ALJ did not explain what was "inconsistent" about his finding that her pulmonary function studies (PFS) were impaired, but diffusion capacities were normal; 3) the ALJ was incorrect in his finding that "clinical examinations do not consistently show abnormalities of pulmonary disease"; and 4) the ALJ's reliance on her smoking to discount her allegation that she was unable to afford medication was incorrect.

Because this Court's role in reviewing an ALJ's credibility determination is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record," the Court will examine each of the ALJ's reasons. *Jones*, 336 F.3d at 476.

*Standing/Walking Limitations*

Plaintiff asserts the ALJ's statement that Plaintiff testified "she can only stand and walk 30 minutes" misunderstands her testimony. (Doc. 12, at 10 (citing Tr. 37)). Plaintiff argues she actually testified that she can only stand and walk for 30 minutes at a time, after which she often has to rest. To the extent the ALJ misunderstood this limitation, it is harmless because the ALJ limited Plaintiff to sedentary work.

*Fibromyalgia*

In his credibility analysis, the ALJ first faulted Plaintiff for the lack of evidence supporting the impairment of fibromyalgia. (Tr. 38). This is curious given the ALJ's: 1) acceptance of fibromyalgia as a severe impairment (Tr. 33); and 2) adoption of Dr. Gilliam's conclusions on Plaintiff's residual functional capacity, which were based on Plaintiff's fibromyalgia and obstructive

8

pulmonary disease (Tr. 241). This reasoning is illogical, and the ALJ's discounting of Plaintiff's fibromyalgia symptoms is not supported by substantial evidence.

*Chronic Obstructive Pulmonary Disease*

*Diffusing Capacity*

The ALJ also appeared to reject chronic pulmonary obstruction stating: "regarding the Plaintiff's chronic obstructive pulmonary disease, PFS [pulmonary function studies] are impaired, but diffusion capacities are normal." (Tr. 38). The ALJ was seemingly referencing an April 2008 report from Dr. Nathan, which states:

> There is a severe obstructive lung defect. The airway obstruction is confirmed by the decrease in flow rate . . . . An obstructive lung defect is confirmed by an increased RV. Diffusion capacity is within normal limits. FVC changed by 19%. FEV1 changed by 26% . . . . This is interpreted as a good response to bronchodilator."

(Tr. 328, 331).

"Pulmonary diffusing capacity" is "[t]he process by which the blood obtains oxygen from the lungs involv[ing] the passage of the gas through the membrane which separates the air within the tiny sacs (alveoli) of the lungs from the blood in the capillaries which surround the sacs." 5 J.E. Schmidt, *Attorney's Dictionary of Medicine and Word Finder*, at P-527 (2008). This does not diminish the presence of bronchial constriction, but only shows Plaintiff's alveoli were functioning within normal limits of oxygen exchange. It is not inconsistent with diminished pulmonary function or the presence of pulmonary disease. Again, the ALJ's reasoning is inconsistent given the simultaneous acceptance of chronic obstructive pulmonary disease as a severe impairment (Tr. 33) and the adoption of Dr. Gilliam's conclusions on Plaintiff's residual functional capacity based on the presence of fibromyalgia and obstructive pulmonary disease (Tr. 241). Essentially, the ALJ's reasoning shows he failed to acknowledge Dr. Parmet's July 2006 diagnosis of bronchiolitis

obliterans (Tr. 287), and the supporting materials from medical journals in the record which differentiate this condition from emphysema due to normal diffusing capacity (Tr. 211-19). This portion of the ALJ's credibility analysis is therefore not supported by substantial evidence.

*Abnormalities*

Plaintiff also argues the ALJ's claim that "clinical examinations do not consistently show abnormalities of pulmonary disease" (Tr. 38) is incorrect. She points out that "examinations as early as 2003 showed a prolonged expiratory phase." (Doc. 12, at 12 (citing Tr. 227)). She emphasizes that Dr. Gilliam, Dr. Parmet, and Dr. Nathan observed a variety of symptoms in 2006 and 2007 including prolonged expiration, wheezing, scattered rales, and decreased breath sounds. (*Id.*).

Earlier in his analysis, the ALJ pointed out that during Plaintiff's June 2005 emergency room visit, a clinical examination "showed no significant abnormalities including pulmonary." (Tr. 34). The emergency room record indicates that Plaintiff's lungs were "[c]lear to auscultation with no wheezing, rales, or rhonchi." (Tr. 231). Similarly, Dr. Gilliam noted "[n]o wheezes, rales, rhonchi" in 2006, though he did find decreased breath sounds and prolonged expiration. (Tr. 241).

Although Plaintiff is correct that doctors frequently noted abnormalities, it is not the Court's role to "try the case de novo, nor resolve conflicts in evidence . . . . " *Gaffney*, 825 F.2d at 100. The ALJ's statement that "clinical examinations do not consistently show abnormalities of pulmonary disease" (Tr. 38) is supported by substantial evidence.

*Failure to Routinely See Physician*

Plaintiff does not argue against the ALJ's finding that her failure to routinely see a physician – for either her physical or mental impairments – is a reason to discount her credibility. However,

this finding is not supported by substantial evidence. A Social Security Ruling, SSR 96-7p, 1996 WL 374186, *7, explains:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

"In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that a claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004); *see also Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 335 (6th Cir. 2007) (noting claimant's "modest treatment regimen . . . is inconsistent with a diagnosis of total disability).

The ALJ noted: "If the claimant's symptoms were as severe as she states they are, then one would expect that she would be seeking out more intense treatment." (Tr. 38). Plaintiff alleges she has been disabled since March 11, 2003. From that time through the time of her social security application, records of her medical visits are primarily from consultative or state agency physicians. Plaintiff provided no explanation for her infrequent medical visits. There are, however, notes in Plaintiff's records indicating her failure to seek treatment is a result of her inability to afford it. *See* Tr. 278 (note from July, 2006: "Cathy hasn't been to see a Dr for several years as she has no medical insurance"); Tr. 354 ("She does clinically carr[y] a diagnosis of COPD, needs to grade the severity as the patient is a self-pay."); Tr. 363 ("She has no insurance and hence she did not undergo any studies."). Because an ALJ "must not draw any inferences about an individual's symptoms and their

11

functional effects from a failure to seek or pursue regular medical treatment *without first considering . . . other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment*", SSR 96-7p, 1996 WL 374186, *7, and there is no indication the ALJ did so here, this portion of his decision is not supported by substantial evidence.

*Failure to Take Medication*

Plaintiff contends it was error for the ALJ to find "Ms. Bates's testimony that she could not afford her medications was inconsistent with the fact that she was 'able to afford one to two packs of cigarettes a day.'" (Doc. 12, at 12 (quoting Tr. 38)). Plaintiff argues: "Ms. Bates testified that the prescribed medications were almost $4000 a month. Tr. 19. This court can take judicial notice that this is a significantly higher amount than the cost of a month's supply of cigarettes." (*Id.*). Defendant responds that the ALJ simply recognized that the cost of her cigarette usage "still accounted for the cost of some medication." (Doc. 14, at 13).

As discussed above, although treatment is a factor an ALJ may consider in assessing credibility, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment *without first considering any explanations that the individual may provide*, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, *7. Plaintiff here explained she did not take prescription medication because it cost $4,000 per month and she could not afford it. There is evidence in the record other than her testimony to support this claim. *See* Tr. 278 (note from July 2006: "Medications – aspirin, should be taking other meds, but has no health insurance and can't get health insurance due to illnesses").

12

The Sixth Circuit has held it appropriate to discount a claimant's ability to pay for prescribed treatment based on the cost of a claimant's smoking, however it did so in the context of less expensive treatment. *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (1988). In *Sias*, the court explained claimant's allegation that "he has not worn the support hose his physician prescribed to alleviate swelling because support hose would cost too much" was not credible in light of his admission that "he smokes two packs of cigarettes a day." *Id.* The court concluded: "Taking judicial notice of the monetary cost of this dangerous habit, we calculate that the cost of the hose could have been covered by the savings the claimant would realize if he gave up cigarettes." *Id.* Here, the ALJ stated Plaintiff "states that she cannot afford the medications, yet she is able to afford one to two packs of cigarettes a day." (Tr. 38). The cost of one to two packs of cigarettes per day is far less than the $4,000 per month Plaintiff testified her medications cost. Although the ALJ could validly find the explanation not fully credible, he could not fault Plaintiff for failure to take medication that she could not afford, and therefore this portion of his credibility analysis is not supported by substantial evidence.[3]

*Smoking*

Plaintiff argues that "while the administrative law judge is correct that smoking is contraindicated, Ms. Bates testified that she is trying to stop smoking and had reduced her consumption from one and one-half packs a day to less than one pack per day." (Doc. 12, at 12).

---

[3] When a claimant has no means to pay for treatment, her conditions are to be evaluated "in the absence of treatment," and if disabling, the ALJ must determine "if there is affordable treatment available." *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990). The ALJ did not do so here. On remand, the ALJ should consider whether there is affordable treatment available, and if not, whether Plaintiff is disabled in the absence of treatment.

Continuing to smoke, despite counseling from physicians to stop, is a valid consideration in evaluating a claimant's credibility. *See Sias*, 861 F.2d at 480; *Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987); *Ninness v. Sec'y of Health & Human Servs.*, 1989 WL 99041, *3 (6th Cir. 1989) ("Moreover, [claimant], despite warnings from physicians, continued to smoke two packs of cigarettes daily; this continued smoking must militate against the credibility of her claim of a completely disabling breathing disorder.").

At least one of Plaintiff's physicians advised her to stop smoking. (Tr. 354, 364). Dr. Nathan noted in July 2007 she "ha[d] given [Plaintiff] a prescription for Nicotrol inhaler after spending about 20 minutes on smoking cessation." (Tr. 254).  In March, 2008, Dr. Nathan again noted: "Advised to quit smoking" and that "[s]he is going to try." (Tr. 363). Two weeks later, Dr. Nathan's notes state: "I had an elaborate discussion about quitting smoking. She is still very young and she has got severe COPD. The patient says she is going to work on it." (Tr. 364). This reason for discounting Plaintiff's credibility is therefore supported by substantial evidence.

*Daily Activities*

"The consistency of the individual's own statements" is relevant to credibility. SSR 96-7p, 1996 WL 374186, *5. "The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances[.]" *Id.* The ALJ pointed out "claimant is able to engage in routine activities, more so than what she testified to." (Tr. 38). Plaintiff testified she becomes short of breath with any type of exertion. (Tr. 15). Specifically, the ALJ noted "[s]he drives, grocery shops, does light housework, visits, etc. And in March 2008 the claimant was preparing for a vacation." (*Id.*). Plaintiff does not dispute this finding and it is supported by substantial evidence in the record. In Dr. Nathan's notes

14

of March, 2008, she noted Plaintiff was "off to Italy." (Tr. 364). Earlier in his analysis, the ALJ stated Plaintiff "cooks, does the laundry, does housework, visits with family, takes care of her personal needs, uses a riding mower, drives, does grocery shopping, takes care of the finances, reads, and goes hunting if someone takes her to and from the area." (Tr. 35). The ALJ's conclusion that "[t]he amount of activities in which the claimant is able to engage is not indicative of someone with debilitating symptoms" (Tr. 16) is supported by substantial evidence.

*Record Inconsistencies*

"Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007); *see also* SSR 96-7p, 1996 WL 374186,*5 ("One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

As examples for his finding that "inconsistencies in the record" diminished Plaintiff's credibility, the ALJ pointed to two medical records. First, after fainting, Plaintiff visited the emergency room in June 2005. Emergency room records from this visit indicate she had a past medical history of fibromyalgia but that she "does not complain of chest pain [or] shortness of breath". (Tr. 230). Second, the ALJ notes that "in July 2006 the claimant reported no neuropsychiatric problems, only hand pain." (Tr. 38). This is supported by Dr. Parmet's independent medical examination notes, which indicate, in the "Review of Systems" section: "Neuropsychiatric – No complaints." (Tr. 283). Therefore, Plaintiff herself has not consistently reported her own

impairments. The ALJ's reliance on record inconsistencies to support his conclusion that Plaintiff is not fully credible is supported by substantial evidence.

Although some of the ALJ's reasons for discounting Plaintiff's credibility are supported by substantial evidence individually – namely inconsistencies in her statements about daily activities and inconsistencies in the record – the ALJ's overall credibility analysis is not supported by substantial evidence.  There are simply too many factual and legal errors in the ALJ's credibility analysis for this Court to find "the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable." *Jones*, 336 F.3d at 476.

### Consideration of the Combination of Impairments

Plaintiff secondly contends the ALJ erroneously rejected any work-related effects based on her mental impairments and failed to consider those impairments in combination with her physical impairments.

When an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, *5. An ALJ's cursory reference to the combined effect of a plaintiff's impairments is insufficient. *Blankenship v. Bowen*, 874 F.2d 1116, 1123-24 (6th Cir. 1989). However, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Serv.*, 901 F.2d 1306, 1310 (6th Cir.1990) (quoting *Gooch v. Sec'y of Health &Human Serv.,* 833 F.2d 589, 592 (6th Cir.1987)).

Plaintiff's arguments distill into a vocational question of whether she can perform her past relevant work given the restriction to "simple, repetitive tasks" stated by Mr. Sours, MA, a state agency consultative psychologist. (Tr. 256). Sours diagnosed depression and anxiety. (*Id.*). He opined Plaintiff's symptoms would intensify under stress and pressure of a work setting, presenting a mild degree of impairment. (*Id.*). Sours stated Plaintiff "has the ability to understand and follow instructions, as well as to maintain sufficient attention to perform simple repetitive tasks." (Tr. 256). The vocational expert at the administrative hearing stated if Plaintiff were restricted to simple tasks and low stress work, she would not be able to work as a customer service representative as generally performed. (Tr. 21-22).

The ALJ referred to Sours' report, but glossed over the opinion to limit Plaintiff's work performance initially. (Tr. 34, 35). The ALJ later quoted Sours in full, but only as support for the ALJ's conclusion that Plaintiff had no mental impairments. (Tr. 36). The ALJ found "affective disorder and generalized anxiety disorder do not cause more than minimal limitation in the Plaintiff's ability to perform basic mental work activities and are therefore non-severe." (Tr. 35). The ALJ focused on the "B-criteria" from the Listing of Impairments, which supported the conclusion that the impairment was non-severe for purposes of 20 C.F.R. §§ 404.1521(b) and 416.921(b).

The Psychiatric Review Technique ratings of the "B-criteria" of none or mild in the first three functional areas and none in the last functional area indicate non-severe impairment,"unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4); 404.1520a(d)(1); 416.920a(d)(1). The ALJ's use and consideration of the B-criteria was correct. There was

17

substantial evidence supporting a conclusion that a simple, repetitive work restriction did not impact basic mental work activities, and hence was non-severe.

However, an analysis of the degree of mental restriction ending at the point of non-severe impairment is erroneous and reversible. *See* 20 C.F.R. §§ 404.1545(e); 416.945(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment . . . , we will consider the limiting effects of all your impairment(s), *even those that are not severe*, in determining your residual functional capacity . . . ." (emphasis added)); *Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007).

The ALJ's RFC determination contains no mental restrictions, only physical restrictions. Defendant contends although Sours found Plaintiff could maintain sufficient attention to perform simple, repetitive tasks, he did not limit her to such tasks. Defendant points out Plaintiff successfully completed all tasks at the exam with no deficits in memory or concentration. Defendant's construct of Sours' opinion is reasonable – there was no clear work restriction to simple, repetitive work only. However, this restriction merited discussion beyond whether Sours ascribed non-severe mental impairment.

The ALJ additionally neglected to consider the mental residual functional capacity assessment from a reviewing state agency physician. (Tr. 257-70). "[S]tate agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," whose findings must be considered "as opinion evidence" by the ALJ.  20 C.F.R. §§ 404.1527(f)(2)(i); 416.927(f)(2)(i). The reviewing psychologist found Plaintiff "retains the ability to understand, remember and carry out simple tasks in a low stress environment." (Tr. 269). Although an ALJ "can

18

consider all the evidence without directly addressing in his written decision every piece of evidence", the ALJ's decision contains no explanation regarding why he rejected the possible restriction to simple tasks. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

Had the ALJ fully considered the evidence of work restriction due to mental impairment, he could have rejected these opinions since they are from non-treating psychologists. *See Barker*, 40 F.3d at 794; *see also* 20 C.F.R. §§ 404.1527; 416.927. However, because both opinions – the only two in the record – discussed a possible limitation to simple tasks, and the ALJ provided no meaningful analysis for his apparent rejection of this restriction, remand is necessary.

### Remand for Rehearing

Congress has authorized reversal under the fourth sentence of 42 U.S.C. § 405(g) "with or without remanding the cause for a rehearing." *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174-75 (6th Cir. 1994) (citing *Sullivan v. Hudson*, 490 U.S. 877, 880 (1989)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking," and where no factual issues remain unresolved in the case. *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (quoting *Faucher,* 17 F.3d at 176). In all other instances, remand under the fourth sentence for rehearing is required. *See Faucher,* 17 F.3d at 175-76. Evidence of disability in this matter is not overwhelming and factual issues remain unresolved. Remand for rehearing is required.

### Conclusion and Recommendation

The issues before this Court must be resolved under the standard of whether the determination is supported by substantial evidence of record. 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). For the foregoing reasons, based on the arguments presented, the record in this matter, and applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI

19

based on an incorrect application of law and consequently lacking in support by substantial evidence. Therefore, the undersigned recommends that the administrative decision be reversed and remanded under the fourth sentence of 42 U.S.C. § 405(g) for rehearing.

s/James R. Knepp II<br>
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).